IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT MACKLING,<br><br>                      Plaintiff,<br><br>    vs.<br><br>ANDREW SAUL, Acting Commissioner of<br>Social Security;<br><br>                 Defendant. | **8:20CV347**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on motions for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). Filing Nos. 16 and 20. The Plaintiff, Scott M. appeals a final determination of the Commissioner denying him social security disability benefits. This Court has jurisdiction under 42 U.S.C § 405(g) and § 1383(c)(3).

## BACKGROUND

### I.  Procedural History

Scott M. applied for social security disability insurance and supplemental security income on May 22, 2018. Filing No. 14-2 at 18. He claims a disability onset date of December 6, 2017 resulting from a motor vehicle accident and subsequent back fusion surgery. *Id.* Scott M. alleges he suffers from debilitating back pain, difficulty sleeping, depression, and incontinence, culminating in an inability to bend, lift, sit, or stand for more than a few minutes at a time. *Id.* at 23-25. Consequently, Scott M. was unable to maintain his employment as a cement truck driver. *Id.* at 26. The Social Security Administration denied Scott M.'s claims twice, first on November 14, 2018 and on reconsideration on

April 12, 2019.[1]  Filing No. 14-3.  Scott M. requested an administrative hearing which occurred before an Administrative Law Judge (ALJ) on October 23, 2019.  Filing No. 14-2 at 18.  The ALJ again denied his application for benefits after finding him not disabled and capable of performing sedentary work on December 6, 2019.  Id.  Scott M. requested a review of the hearing decision and the Appeals Council declined to review the ALJ's ruling on June 22, 2020.  Id. at 2-7.  Upon the Appeals Council's denial to review, the ALJ's decision became the final decision of the Commissioner.  Scott M. filed this civil action seeking court review of the Commissioner's findings.

## II.    Testimony

Scott M. was born August 2, 1972 and has a 12th grade education.  Filing No. 14-2 at 39.  He lives at home with his wife and six of eight children ranging in age from 4 to 20 years old.  Id. at 39-40.  Scott M. does not presently work but has experience driving cement trucks and performing general manual labor.  Id. at 40-44.

At the administrative hearing, Scott M. testified he could not work because he cannot sit, lift, bend or twist without severe pain radiating from his back through his shoulders and legs.  Id. at 44-48.  He asserted he suffers from pain in his feet and genitals and requires assistance with toileting.  Id. at 45.  Further, he stated that while any physical activity increased his pain, he could only stand in one place for ten minutes, could only walk for fifteen minutes, could only sit for 25 minutes, and could only recline for 35 or 40 minutes before needing to change position or activity.  Id. at 47-51.

Scott M. testified he could lift a gallon of milk, but he refrained from lifting heavy objects off the ground lest he overexert himself and suffer more severe pain the following

---

[1] Dates of denial are inconsistent throughout the record; November 21, 2018 and April 16, 2019 are other listed dates.  Filing No. 14-2 at 18.

day.  *Id.* at 52-53.  On days when he suffers from overexertion, he struggles to walk and is unable to retrieve the mail or take his children to the park because he needs to sit down after walking very short distances.  *Id.*  On ordinary days, Scott M. claims to manage his pain by sitting down, reclining, then getting up 25-30 times a day.  *Id.* at 49.

In response to questioning by the ALJ, Scott M. asserted he performs only light duties around the home and cares for his four-year-old daughter by ensuring she has lunch and does not hurt herself or get into trouble.  *Id.* at 40.  He also stated he misses many of his children's activities due to his pain but attempts to take advantage of opportunities where he knows he can stand and sit as needed.  *Id.*  Scott M. testified to managing his pain by taking two prescription pain medications as well as Aleve and Advil with minimal success.  *Id.* at 54.  During the hearing, Scott M. needed to stand and described sensations in his legs ranging from numbness and general discomfort to electric-like pain.  *Id.* at 55-56.

During the hearing, a Vocational Expert also testified.  The ALJ asked if a person of Scott M.'s age, education, and work history would be employable in the national economy, assuming the work was sedentary and never required climbing a ladder or crawling and only occasionally required stooping, kneeling, crouching, or climbing stairs. *Id.* at 57.  The Vocational Expert testified affirmatively; there is sedentary unskilled labor in the national economy including, document preparer, polisher of eye frames, and table worker.  *Id.* at 58.  The Vocational Expert, in response to further questioning by Scott M's attorney, admitted that same person would be unable to maintain competitive employment if he or she required standing and walking for ten minutes every twenty-five minutes or needed to raise his or her feet.  *Id.*

## III.    MEDICAL EVIDENCE

The medical record demonstrates Scott M. underwent an extensive back surgery as a result of a motor vehicle accident in December 2017.  Filing No. 14-7 at 18.  At the time of the surgery, Scott M. suffered from a burst fracture with a greater than 50% compromise of the spinal canal and had a significant history of "severe lower back pain and sciatica."  *Id.*  Scott M. followed up with his neurosurgeon Dr. Ralph Reeder, the treating physician, on numerous occasions in the nine months following the surgery.  *Id.* at 2-29.

At his initial follow-up on December 27, 2017, Dr. Reeder was pleased with the outcome of the surgery, noting Scott M's "structural appearance looks excellent."  *Id.* at 14.  However, Scott M. reported back pain, diarrhea, incontinence, and poor appetite.  *Id.* Dr. Reeder suspected Scott M. was clinically depressed and noted he was anxious.  *Id.*

On February 6, 2018, Dr. Reeder was again pleased with the results of the surgery while also noting that Scott M. reported lower back pain, dysesthesia in his left thigh, and use of a walker to relieve pressure on his back.  *Id.* at 10.  Dr. Reeder planned for Scott M. to continue wearing a brace for an additional six weeks before beginning physical therapy and gradually return to work.  *Id.* at 11.

On March 20, 2018, Dr. Reeder's physician's assistant ("PA"), Jacqueline Evernham, examined Scott M. and found that he "appeared to be making wonderful progress."  *Id.* at 7.  She noted Scott M. was still wearing his turtle shell brace and he was looking for employment despite having concerns about whether he would regain his

mobility.  *Id*.  He also described tingling in his back.  *Id*.  PA Evernham released Scott M. to work effective April 1, 2018, for 4-5 hours a day and with a 15-pound weight restriction. *Id*.  She also gave Scott M. a note for 6-8 weeks of physical therapy and instructed him to ween out of his brace.  *Id*.  She anticipated lifting his work restrictions after he had finished physical therapy and completely weaned out of his brace.  *Id*.

On May 8, 2018, Dr. Reeder gave Scott M. another off-work slip citing "the degree of pain and the need for additional healing."  *Id.* at 6.  Dr. Reeder noted Scott M. had "odd feelings" on his thigh as well as pain that rises to a level 7 "as he gets up and goes about his day."  *Id.* at 5.  Scott M. also reported that the narcotic pain reliever, Tramadol, provided minimal relief and that he found his other prescription pain relievers, Gabapentin and Flexeril, to be unhelpful.  *Id*.  Dr. Reeder told Scott M. that he could begin taking NSAID pain relievers and that he should start some aerobic exercises to help reduce his weight.  *Id.* at 6.

On May 24. 2018, Scott M. returned to Dr. Reeder to fill out his disability forms.  *Id.* at 2.  Scott M. reported exercising to help reduce his weight and complained of numbness towards his left leg, while his pain symptoms remained unchanged.  *Id*.  Dr. Reeder filled out the paperwork and suggested vocational retraining, reporting "it is unlikely that he will be able to tolerate heavy lifting or long-term driving."  *Id*.  Further, Dr. Reeder noted, "the patient remains disabled."  *Id*.

On August 22, 2018, Scott M. attended his nine-month follow up with PA Evernham.  *Id.* at 60.  Scott M. reported having difficulty with his mobility and stated he was still unable to "wipe his own bottom."  *Id*.  He claimed to have difficulty walking long distances and that he suffered from "intense, severe thigh pain."  *Id*.  Though his mood

was elevated, he "was quite tearful" about not being able to work. *Id.* PA Evernham noted that Scott M. was sweating while sitting and that it appeared difficult and painful when he walked. *Id.* She also noted that Scott M. had applied to work at the local gas station but was not hired because of his back. *Id.* at 61. She suggested that he "talk with his primary provider about his very obvious depression." *Id.* Scott M. reported that he had lost his insurance, was unable to fill his prescriptions, and was seeking a Medicaid waiver. *Id.* PA Evernham refilled his Tramadol prescription despite Scott M. stating he could not afford it. *Id.*

Throughout the time he was treated by Dr. Reeder, Scott M. had active prescriptions for Tramadol, Flexeril, and Gabapentin for pain, Lexapro for depression, and Flomax for urinary issues. *Id.* at 60.

During this time, Scott M. also sought treatment from his primary care provider, Angela Wegner, APRN, on three occasions. On December 29, 2017, Scott M. saw Nurse Wegner and reported diarrhea and depression as well as urinary symptoms. Filing No. 14-7 at 5.

On May 1, 2018, Scott M. met with Nurse Wegner and reported low back pain and radiculopathy down his legs. *Id.* at 33. Scott M. complained he was not able to sleep because his legs jerked him awake at night. *Id.* Nurse Wegner noted that Scott M.'s back was tender and that he had sluggish deep tissue reflexes. *Id.* She prescribed him Ultram 50 for the pain and Requip for restless legs. *Id.*

On June 8, 2018, Scott M. visited Nurse Wegner for assistance with his disability application forms. *Id.* at 31. She found that he had limited range of motion in his lower back and persistent numbness in his thighs. *Id.* She noted Scott M. was in moderate

distress during the consultation and was severely tender in his lower back with pain radiating down his legs. *Id.* Wegner also advised Scott M. to exercise and see a dietician as he was morbidly obese and weight loss would help with pain management. *Id.*

In mid-September 2018, Scott M. received access to healthcare through the Veteran's Administration and sought consultations for tobacco cessation and weight loss. Filing No. 14-7 at 95, 103.

On October 12, 2018, Scott M. saw Tamera Binder, PA-C at the VA clinic for back pain. Filing No. 14-7 at 92. Scott M. reported back pain rating 8 out of 10 and said he had difficulty concentration and functioning due to the pain. *Id.* at 90. PA Binder reported "back movement is limited in all aspects due to increasing pain." *Id.* at 92. She also noted that Scott M. suffered pain with palpation in the right mid-back and recommended Motrin 600MG 3-4 times a day, increased his Gabapentin prescription, and suggested alternating cold and hot compresses. *Id.*

On November 27, 2018, Scott M. saw Dr. Isaac Witkowski at the VA for a Disability Examination. Filing No. 14-7 at 145. Dr. Witkowski found Scott M. could only sit or stand for short periods of time, could not lift or bend, and avoided repetitive use of the trunk because the "level of disease affecting the back [was] severe." *Id.* at 147. Dr. Witkowski noted Scott M. needed help with toileting and that his activities were "very, very limited." *Id.* Upon examination, Dr. Witkowski determined Scott M.'s range of motion was abnormal and effected his sitting, standing, and bending. *Id.* at 149. Dr. Witkowski found Scott M. suffered pain in the lower back upon palpation and that the pain was "easily incited." *Id.* at 150. Further Dr. Witkowski observed "pain, fatigue, weakness, [and] lack of endurance" after repetitive use testing. *Id.* During his examination, Scott M. had an

antalgic gait as a result of the pain in his back and had no deep tendon reflexes in either of his knees or ankles. *Id.* at 152-153. Dr. Witkowski noted Scott M.'s x-rays demonstrated no mature fusion, a moderate chronic compression fracture and mild degenerative disk changes. *Id.* at 158. Dr. Witkowski determined Scott M.'s "back would very likely prohibit all forms of employment due to the severity of his back disease." *Id.*

On June 27, 2019, Scott M. returned to see Nurse Wegner for back pain radiating down his left leg and numbness over his left thigh. Filing No. 14-7 at 168. Nurse Wegner's exam demonstrated notable pain with palpation radiating from Scott M.'s back down through is left hip. *Id.* Nurse Wegner advised him to continue with his Gabapentin and Aleve, and prescribed Flexeril for additional pain management. *Id.* She also recommended exercise with zero gravity equipment to reduce stress on his back and prescribed Phentermine to assist with weight loss. *Id.*

On August 14, 2019, Scott M. returned to Wegner complaining of difficulty sleeping, back pain, and bladder control issues. Filing No. 14-7 at 170. Wegner noted Scott M. suffered pain on both sides of his lower back when palpated. *Id.* Wegner ordered an MRI and a sleep test to investigate his insomnia. *Id.* Scott M.'s MRI occurred on August 27, 2019 and due to the amount of hardware installed during the original back surgery, the imaging was largely obscured. *Id.* at 173. However, the radiology report did note "extensive postoperative changes" and "old compression fracture deformities." *Id.*

## IV.    Consultative Reports

On November 3, 2018, a state agency medical consultant, Dr. Daniel Cronk, reviewed Scott M.'s medical records and found Scott M.'s severity of symptoms "fairly consistent [with] overall MER." Filing No. 14-3, at 5. Nevertheless, Dr. Cronk opined that

Scott M. would be capable of sedentary work by December 5, 2018 with restrictions on climbing, kneeling, crouching, balancing, stooping, and crawling. *Id.* at 7-8. On April 7, 2019, a second state agency medical consultant, Dr. David Braverman, reviewed Scott M.'s medical records and proffered the same opinion. *Id.* at 33-34. However, Dr. Braverman refrained from offering any Findings of Fact and Analysis of Evidence. *Id.* at 31.

## V.  ALJ's Findings

The ALJ determined Scott M. was not disabled, as defined by the Social Security Act, between December 6, 2017 and December 6, 2019. Filing No. 14-2 at 19. The ALJ followed the sequential evaluation process for assessing disability claims. *Id.* The ALJ acknowledged Scott M. had not been gainfully employed since December 6, 2017. *Id.* at 20. The ALJ determined Scott M. suffered from severe impairments due to residuals of L1 burst fracture status post fusion surgery, degenerative disc disease of the lumbothoracic spine, and obesity, but not incontinence or depression. *Id.* at 21. The ALJ asserted the combination of his severe impairments do not meet or medically equal the severity of the listed impairments in 20 CFR § 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). *Id.* at 22.

Ultimately, the ALJ ruled Scott M. had a residual functional capacity sufficient to perform sedentary work with several additional limitations. *Id.* The additional limitations precluded Scott M. from climbing ladders, ropes, scaffolds, and crawling and dictate that he only occasionally climbs ramps and stairs, balance, stoop, kneel, or crouch. *Id.* Further, Scott M. was limited to only occasional exposure to extreme heat, vibration, and hazards such as high exposed places and moving mechanical parts. *Id.* With these

limitations and RFC established, the ALJ concluded Scott M. could work as a document preparer, polisher of eye frames, or a table worker. *Id.* at 27-28.

The ALJ opined that while Scott M.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence." *Id.* at 23. The ALJ observed that medical notes do not record Scott M. complaining of back pain while sitting after November 2018 and she determined their absence in the medical records suggested improvement. *Id.* at 24. Further, the ALJ asserted there were "no clinical findings of pain behaviors, weakness, or limited range of motion" in the treatment notes since December 2018. *Id.* Accordingly, the ALJ concluded the medical evidence did not support Scott M.'s claim he suffered pain while sitting after December 2018. *Id.*

The ALJ reviewed the opinions of treating physician Dr. Reeder and the VA physician Dr. Witkowski and found them only partially persuasive. *Id.* at 25-26. The ALJ concluded Dr. Reeder's assessment that Scott M. would not be able to drive long term was unsubstantiated in the facts because he only once notes seeing Scott M. suffer pain while sitting. *Id.* And, the ALJ asserted, Dr. Isaac Witkowski's assessment that Scott M.'s functional loss effecting sitting, standing, bending and trunk movement was insufficiently defined. *Id.* The ALJ also alleged Dr. Witkowski's assessment to be unsupported because he did not mention observable pain behaviors. *Id.*

Alternatively, the ALJ found the medical opinions of the State agency medical consultants to be persuasive because "they [were] well-supported and consistent with the overall evidence of record." *Id.* at 26.

## STANDARD OF REVIEW

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence "is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison*, 305 U.S. at 229).

However, this "review is more than a search of the record for evidence supporting the [ALJ or Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). In determining whether there is substantial evidence to support the Commissioner's decision, this court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). Accordingly, the Social Security Administration has promulgated a

sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity ("RFC") and his or her age, education and work experience.

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). An ALJ's RFC determination (1) must give appropriate consideration to all of a claimant's impairments; and (2) must be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

In order to be supported by substantial evidence, an ALJ's RFC finding must be supported by a treating or examining source opinion. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). A claimant's RFC is a medical question and "'an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008). "The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

According to new Social Security Administration rules effective March 27, 2017, the ALJ need not grant any medical opinion controlling weight regardless of whether the opinion comes from a treating, examining, or consulting physician. 20 C.F.R. § 404.1520c. Instead, the ALJ must evaluate medical opinions according to 5 factors: (1) Supportability, (2) Consistency, (3) Relationship to the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors. *Id.* According to the rule, supportability and consistency are the most important factors and must be addressed by the ALJ in his or her decision. *Id.* Thus, while the new rules do not dictate the weight the ALJ is to ascribe to any given medical opinion, the ALJ is required to explain why she finds a medical opinion to be persuasive or not. *Dornbach v. Saul*, No. 4:20-CV-36 RLW, 2021 WL 1123573, at *3 (E.D. Mo. 2021). Therefore, the old standard that "when an ALJ discounts a treating [source's] opinion, she should give good reasons for doing so" still applies. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).[2]

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the Commissioner engages in a two-step process: (1) first, the ALJ considers whether there are underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work. Soc.

---

[2] This Court reserves judgment on how the new rules interact with long held case law precedent outlining the substantial weight due to the medical opinions of treating physicians, as the result would be the same in this case no matter which rules apply. *See Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th Cir. 2015).

Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (Policy Interpretation Titles II & XVI: Evaluation of Symptoms in Disability Claims).  In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*, 81 Fed. Reg. at *14168.  To determine the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ evaluates objective medical evidence, but will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled. *Id.*  However, the ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *14169.

If an ALJ cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then she must carefully consider other evidence in the record—including statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in the Social Security regulations—in reaching a conclusion about the intensity, persistence, and limiting effects of an

individual's symptoms.  *Id.*   Those factors include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  *Id.* at *14169-70.

"An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole."  *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)).  A claimant may have disabling pain and still be able to perform some daily home activities.  *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); *see also Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). "[The Eighth Circuit Court of Appeals] has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)).  Allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken

only occasional pain medications.  *Id.*  Similarly, a failure to follow a recommended course of treatment also weighs against a claimant's credibility.  *Id.*

This Court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations but [does] not require an ALJ to mechanically list and reject every possible limitation."  *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).  An ALJ is not required to discuss all the evidence in the record to show that it was properly considered.  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).  "Simply because a matter is not referenced in the opinion does not mean the ALJ failed to rely on the evidence in making his determination.  However, this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion."  *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).  An ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability."  *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)).

## DISCUSSION

The Court must decide whether the ALJ erred in determining Scott M. had an RFC enabling him to perform sedentary work with additional environmental limitations.  The ALJ made this RFC determination despite Scott M.'s subjective reports of pain while sitting because "their absence in recent treatment notes suggests improvement."  Filing No. 14-2 at 24.  Indeed, this is the ALJ's central conclusion regarding the medical evidence:  Since treatment notes from December 2018 to present contain neither complaints nor objective findings that point to limitations on sitting or concentration, the undersigned does not find that the claimant's ability to sit or mentally complete tasks was limited by his back for more than 12 months following the burst fracture.  *Id.*  The ALJ

then referred to this determination when she explained how persuasive she found Dr. Reeder and Dr. Witkowski's medical opinions. *Id.* at 25-26. While discussing Dr. Reeder's opinion she stated, "[t]o the extent this suggests a limitation on sitting, it is neither supported . . . nor consistent with the more recent objective medical evidence of record discussed above." *Id.* at 25. And with regard to Dr. Witkowski she stated, "to the extent he imposed limitations on sitting, his opinions are inconsistent with the other evidence of record, because the objective medical evidence of record, taken as a whole, does not reveal that the claimant has exhibited difficulty with sitting, as explained above." *Id.* at 26.

In making such an RFC determination, the ALJ must base her conclusions on competent medical evidence establishing the physical and mental activity the claimant can perform in a work setting. *Mabry v. Colvin,* 815 F.3d 386, 390 (8th Cir. 2016). A claimant's RFC is a medical question and "'an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008). "The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). In assessing medical opinions, the new rules require the ALJ to address each opinion's supportability and consistency. 20 C.F.R. § 404.1520c. The new rule describes supportability as "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion" will be. *Id.* Similarly, the rule defines consistency as "The more consistent a medical opinion . . . [is] with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." *Id.*

To this end, the ALJ found the two medical opinions of the state agency medical consultants to be persuasive because their conclusions that Scott M. could perform sedentary work was consistent with the "improvement noted in medical records and the relatively benign findings in recent treatment notes, both of which were discussed above." Filing No. 14-2 at 26.

On April 7, 2019, Dr. Braverman completed a consultative review of Scott M's medical files for reconsideration of his application for benefits and concluded he was capable of sedentary work. Filing No. 14-3 at 47. In the RFC portion of his report, when asked to "explain exertional limitation and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusions are based" he writes "see fofae." *Id.* at 45. However, in the Findings of Fact and Analysis of Evidence, Dr. Braverman simply writes "see RFC." *Id* at 43. Since Dr. Braverman does not offer any evidence or analysis to support his RFC conclusions, his opinion is necessarily unpersuasive as defined by 20 C.F.R. §404.1520c. Additionally, the Eighth Circuit has long held that a medical opinion given in a checklist format or that is otherwise incomplete has no evidentiary value. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Therefore, the ALJ erred in considering Dr. Braverman's opinion persuasive.

On November 3, 2018, Dr. Cronk provided a consultative medical opinion predicting Scott M. could perform sedentary work by December 2018. Filing No. 14-3, at 9-10. Dr. Cronk made this predication based on an assessment that Scott M.'s symptoms were resolving. *Id.* at 7. However, in his Findings of Fact and Analysis of Evidence he

provides no evidence that Scott M.'s symptoms were improving.  *Id.* at 7.  In fact, Dr. Cronk noted Scott M.'s complaints were consistent with his medical record and he noted no disagreement with Dr. Reeder's opinion that Scott M. would be unable to do long term driving.  *Id.* at 5.  In his conclusion Dr. Cronk observes Scott M. "has sever TTP that radiates into BLE, walking/standing for long periods is difficult."  *Id.*  He also observed Scott M.'s pain was somewhat improved with position changes, was exacerbated by his obesity, and that Scott M. suffered side effects from pain medication.  *Id.*  Beyond these observations, Dr. Cronk offers no objective evidence nor any explanations to support the prediction that Scott M. would be able to perform sedentary work within one month of his review of the medical files.  *Id.*  Since the most important factors in establishing a medical opinion's persuasiveness are consistency and supportability, and Dr. Cronk's opinions are both unsupported by any explanation and inconsistent with the objective evidence he provided, his opinion is necessarily unpersuasive according to 20 C.F.R. §404.1520c. Therefore, the ALJ erred in finding Dr. Cronk's consultative opinion to be persuasive.

Because both state agency medical consultants proffered opinions that were unpersuasive according to Social Security rules, the ALJ made an RFC determination without any supporting opinions from an acceptable medical source.  And, since she is not permitted by law to simply draw her own conclusions from the medical files, the ALJ made a reversable error in establishing her RFC determination without substantial evidence.

The ALJ made two additional errors worth addressing.  First, she improperly found Dr. Witkowski's medical opinion to be unsupported and inconsistent.  And second, while

making her RFC determination she failed to minimally explain why she disregarded Scott M.'s subjective account of his limitations.

### i.    Dr. Witkowski's Opinion:

On November 27, 2018 Dr. Witkowski physically examined Scott M. for a VA disability assessment and found "he can only sit or stand for short periods . . . his level of disease affecting the back is SEVERE." Filing No. 14-7 at 146-147. The ALJ determined Dr. Witkowski's opinion was only partially supported because he did not define the extent of Scott M.'s "functional loss," his report "did not mention observable pain behaviors," and he did not explain why he concluded Scott M. could only sit or stand for short periods of time. Filing No. 14-2, at 25-26. Functional loss is defined by the VA as "the inability . . . to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance" that may be caused by "pain, supported by adequate pathology and evidences by the visible behavior of the claimant." 38 CFR § 4.40. Since functional loss has a legal definition, it is unnecessary for a physician to define it in his medical notes.

Further, Dr. Witkowski tested Scott M.'s range of motion, finding it well below the norm due to the presence of observable pain during the exam. Filing No. 14-7 at 150. Indeed, Dr. Witkowski notes pain was evident when testing Forward Flexion, Extension, Right Lateral Flexion, Left Lateral Flexion, Right Lateral Rotation, and Left Lateral Rotation. Id. Dr. Witkowski's objective findings demonstrate Scott M. suffered from functional loss, wherein he was unable to perform normal working movements of the trunk due to pain that was observable during the examination. Id. Additionally, Dr. Witkowski's examination demonstrated "pain across both side of mid-lower back, easily incited." Id.

After three repetitions, Dr. Witkowski observed increased pain, fatigue, and weakness leading to significantly decreased range of motion in all respects. *Id.* Dr. Witkowski's other objective findings include observing Scott M. walking with an antalgic gait, favoring his back, and an inability to sit or stand for very long. *Id.* at 152. Scott M. had no deep tendon reflexes in either leg, decreased sensitivity to light touch on his left thigh, moderate pain, dysesthesias, and numbness on his left lower extremity, and was unable to perform a straight leg raising test on either leg. *Id.* at 152-153. Dr. Witkowski also ordered x-rays of Scott M.'s spine and found extensive post-surgical changes, no mature fusion, moderate chronic compression fracture, and mild degenerative disk changes. *Id.* at 158.

The ALJ is incorrect to assert Dr. Witkowski failed to mention observable pain behaviors. Additionally, Dr. Witkowski explained why he thought Scott M. had difficulty sitting and offered extensive objective evidence consistent with his opinion. Therefore, according to 20 C.F.R. §404.1520c, Dr. Witkowski's opinion was persuasive since it was both well supported and consistent and the ALJ erred in finding otherwise. Additionally, since disability is defined as the inability to work for a continuous period of not less than 12 months, Dr. Witkowski's examination is significant in that it is the only medical opinion proffered within just 9 days of Scott M.'s one year since on-set date.

**Scott M.'s Subjective Account:**

The ALJ found that while Scott M.'s medically determinable impairment could reasonably cause his alleged symptoms, his "statements concerning their intensity, persistence, and effects are not entirely consistent with the medical evidence." Filing No. 14-2 at 23. The ALJ acknowledged Scott M.'s medical records supported his alleged functional limitations in May and June of 2018. But, because the medical provider notes

failed to document Scott M.'s complaining of difficulty sitting due to pain after November 2018, she inferred his symptoms improved.  *Id.*  Further, the ALJ suggested that because Scott M. was exercising and applying for jobs in August 2018, then these symptoms must have improved.  *Id.*

*Argumentum ad Silentio* is a common logical fallacy wherein one asserts a conclusion based on the absence of evidence rather than on actual evidence.  That is why the ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the *degree* of impairment."  Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.).  Simply because the medical notes fail to mention "pain while sitting" verbatim does not reasonably lead to the conclusion that Scott M. no longer suffered pain while sitting.  Indeed, medical notes from as recently as June and August 2019 mention Scott M. suffered from back pain and radiculopathy and his August 2019 MRI showed "postoperative changes . . . moderate superior compression fracture . . . [and] spondylolisthesis."  Filing No. 14-7, at 168, 170, 172.  None of the objective medical evidence demonstrates Scott M. could sit without pain after December 2018.  In fact, these objective findings could reasonably cause a person pain while sitting.

Social Security rules allow ALJ's to consider the claimants attempts to seek medical treatment and their persistence in following treatment when evaluating intensity and persistence of symptoms.  Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.).  Continuing attempts to obtain relief evince persistent symptoms, and if "frequency or extent of treatment sought . . . is not comparable with the degree of the individual's complaint" the ALJ may deem the individuals subjective complains

inconsistent with the record.  *Id.*  However, in such a case, the ALJ must consider possible reasons for the claimant to not seek treatment.  *Id.*  Possible reasons include undesirable side effects of prescription drugs, mental impairments, or financial constraints.  *Id.* Further, the ALJ must "explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms."  *Id.*  The record demonstrates Scott M. sought medical treatment for back pain less frequently after December 2018.  However, the record also demonstrates that Scott M. lost his health insurance and was unable to pay for physical therapy or continued follow-ups with Dr. Reeder.  Filing No. 14-5 at 37; Filing No. 14-7 at 31.  Further, Scott M. was prescribed anti-depressants and had "very obvious depression."  Filing No. 14-7 at 13, 35, 61.  Losing one's insurance combined with clinical depression are both legitimate reasons why a person might stop seeking treatment.  Yet, the ALJ failed to explain or even mention any possible reasons why Scott M. would have reduced his attempts at seeking treatment before she concluded his symptoms must have improved.  This omission directly violates Social Security Rule 16-3p.

Further, the ALJ cites medical records noting Scott M. was exercising and applying for jobs as evidence his condition had improved.  Filing No. 14-2 at 24.  However, the medical records also note that Scott M.'s doctors recommended he exercise to lose weight as part of his medical plan.  Filing No. 14-7 at 2, 6, 31, 103.  The fact that Scott M. was exercising demonstrates his persistence in following his treatment plan and, according to the rules, persistence in following a treatment plan factors in favor of the claimant's subjective complaints.  Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.).  Additionally, the record shows Scott M. was applying for jobs and having difficulty getting hired due to his back.  Filing No. 14-7 at 61.  Scott M.'s long history

of employment prior to his onset day in conjunction with attempting to work both lend credibility to his subjective accounts. *See Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001).

Scott M. argues the ALJ failed to consider his daily activities when assessing the intensity, persistence, and limiting effects of his pain. Filing No. 17 at 21-23. The Commissioner, alternatively, argues the ALJ did in fact consider Scott M.'s daily living activities before making her RFC determination despite not elaborating on them in her ruling. Filing No. 21 at 13. The commissioner also contends Scott M's daily living activities are inconsistent with his subjective complaints. *Id.* The Commissioner points to Scott M.'s March 2019 Daily Activities and Symptoms Report in which Scott M. states he can load the dishwasher, wipe the counters, do small loads of laundry, as well as drive for 20-40 minutes, take his kids to school, and sleeps in a chair to show Scott M.'s daily activities demonstrate he has no significant difficulty driving or sitting. *Id.* However, the Daily Activities Log also shows that Scott M. has to stand and walk if he drives for more than 20-40 minutes; if he sits for more than 15 minutes, it is hard for him to stand up; while watching TV he has to get up every 15 minutes because of back pain; he misses his children's sporting activities because he is limited in how long he can sit; after 15 minutes of sitting, his legs go numb; riding in a car makes the symptoms worse; he rests by sitting down but has to stand back up after 15 to 20 minutes. Filing No. 14-6 at 43-47. Unfortunately, we do not know to what extent the ALJ took the daily activities into consideration since she does not address them in her opinion. While the ALJ need not discuss all relevant evidence in her opinion she must acknowledge and consider it and she must minimally articulate her reasons for rejecting evidence. *Ingram v. Chatter*, 107

F.3d 598, 601 (8th Cir. 1997).  In this case, the ALJ's opinion simply concluded Scott M. could sit without pain after December 2018 and did not minimally articulate why she rejected Scott M.'s Daily Activity evidence.

Because the ALJ failed to support her decision to disregard Scott M.'s consistent subjective complaints regarding pain while sitting without addressing, (1) the possible reasons he stopped pursuing treatment, and (2) did not acknowledge factors such as daily activities, precipitating or aggravating factors, type, dosage effectiveness and side effects of medication, or other measures Scott M. takes to alleviate pain she improperly discredited Scott M.'s subjective descriptions of his functional limitations.

## CONCLUSION

The overwhelming weight of evidence supports the conclusion that Scott M. has been disabled since his motor vehicle accident and spinal surgery in December 2017. Reversal and remand for an immediate award of benefits is only appropriate where the record overwhelmingly supports a finding of disability; this Court finds "the clear weight of the evidence fully supports a determination [Scott M.] is disabled within the meaning of the Social Security Act."  *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). More importantly, the Eighth Circuit has repeatedly approved of immediately awarding benefits based upon the opinions of a claimant's medical provider.  *See, id.; Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *cf. Papesh v. Colvin*, 786 F.3d 1126, 1135-36 (8th Cir. 2015).  Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate.  *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001).

Accordingly,

IT IS ORDERED THAT:

1. The plaintiff's motion to reverse, Filing No. 16, is granted;

2. The defendant's motion to affirm, Filing No. 20, is denied;

3. The decision of the Commissioner of the Social Security Administration is reversed;

4. This action is remanded to the Social Security Administration for an award of benefits; and

5. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 15th day of July 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge